# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:16-CV-00186-GCM

| | |
|---|---|
| BROOKWOOD HOMEBUILDING AND REMODELING, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )     **ORDER** |
| | ) |
| LANDIS REED HOMES, LLC, | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgement (Doc. No. 12), Plaintiff's Response in Opposition to the Motion for Summary Judgment (Doc. No. 16), and Defendant's Reply to the Response to the Motion for Summary Judgment (Doc. No. 18). The parties' motions are ripe for disposition.

**I.  Background**

This case involves a copyright infringement dispute between two parties. Plaintiff is a residential homebuilding company, which has a sole member and manager, Randall Nassar, that engaged in licensing negotiations for the Caswell architecture designs with the Defendant, another homebuilding company, which ultimately fell through. Plaintiff alleges that Defendant proceeded to construct homes using the Caswell design under a new name, New Castle.

In either 2005 or 2006 Nassar hand drew sketches for a house on graph paper. These sketches included floor plans, all of the rooms, front elevations, and where doors and windows

would go. Brookwood Dep. 28:5-13. The sketches were not kept but they are estimated to have been around 3-4 pages.

The sketches were used by Drafting & Design ("D&D") employees Jay Bodner, Jimmy Levin, and Craig Jones to create the Caswell plans using AutoCAD® software. Mr. Bodner testified that the creative decisions were made by Mr. Nassar. D&D Dep 55:17-19. However, the graph paper sketch did not include details such as roof shingles, or porch railings. *Id.* 27:9-24. Mr. Bodner also testified that it was not his understanding that he had rights to the Caswell Plan and he believes the author of the Caswell Plans to be Mr. Nassar. *Id.* 36:8-24, 55:10-56:9. However, Mr. Nassar does not know who to use AutoCAD® software and so did not participate in actually using the software to create the Caswell plan.

On June 12, 2015, Brookwood filed an application to register the copyrights in the Caswell Plans. The copyright application for the Caswell design did not include the sketches drawn by Mr. Nassar. Brookwood Dep. 27:22-25. The copyright application only included the Caswell Plans created by Bodnar, Levin, and Jones using the AutoCAD® software and did not identify this Plan as being derivative of any work, including Mr. Nassar's sketches. The copyright application identifies Nassar as the author of the Caswell Plans and Brookwood as the owner of the copyrights by virtue of a written agreement. Nassar claims to have created a hand-written assignment in 2010 that assigned his copyrights in the Caswell Plans to Brookwood. However, no one can find the 2010 hand-written assignment.

Defendant has filed a Motion for Summary Judgment. Defendant argues that Mr. Nassar has no ownership interest in the Caswell design because he is not the author of the copyrighted work and therefore Plaintiff lacks standing to pursue a claim for infringement of the asserted

2

copyright. Plaintiff responds that (1) Nassar is the author of the Caswell Plans, (2) if Nassar is not the sole author he is at minimum a co-author of the Plans, and (3) even if D&D is the sole author of the Plans, D&D assigned any rights it did have in the Plans to Brookwood and so Plaintiff would still have standing in this scenario.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence" in support of the non-movant's position is not sufficient to establish a genuine dispute. *Id.* at 252. A material fact affects the outcome of the suit under the applicable substantive law. *See id.* at 248. When determining whether a dispute is genuine or a fact is material, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Unsupported speculation, however, is insufficient to defeat a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

## III. Discussion

Copyright protection covers "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. To establish a *prima facie* case of copyright infringement, a plaintiff must demonstrate that "first he owned the copyright to the work that was allegedly copied and second, that the defendant copied protected elements of the work." *Bouchat v.*

*Baltimore Ravens, Inc.,* 241 F.3d 350, 353 (4th Cir.2001); *see also Billco Intern., Inc. v. Charles Products, Inc.*, 776 F.Supp.2d 105, 112 (D.M.D. 2011).

Defendants contend that summary judgment is appropriate because the evidence shows that Nassar does not own the copyright and in fact shows that D&D owns the copyright to the Caswell Plans. The Court's analysis begins with the Plaintiff having a certificate of registration, which is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate," such as ownership. 17 U.S.C. § 410(c).

However, the Defendant posits that statutory presumption of validity does not apply in this case because the copyrighted work was not registered "within five years after first publication of the work" as required by the statute. 17 U.S.C. § 410(c). The Asserted Copyright Registration identifies July 10, 2006, as the date of first publication of the copyrighted work. Brookwood did not file the application that resulted in the Asserted Copyright Registration until June 12, 2015. The Plaintiff does not refute these dates in its response. Since the copyrighted work was not registered within five years of the first publication of the work, the statutory presumptions that the registration is valid and the facts stated in the registration are accurate do not apply.

With the presumption of validity rebutted, the Court turns to the examination of whether Nassar is the author of the underlying work, the Caswell plans. "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989). Relevant indicators of ownership beyond the copyright

4

registration include intent of the parties and documents establishing a chain of title. *Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010).

The added complexity in this case is that the original sketch drawn by Nassar has been lost and so the only evidence to compare those initial sketches with the AutoCAD® Plans are from testimony of Nassar and Bodnar, the D&D representative work worked on the Caswell Plans. Nassar testified that he "drew pretty much everything, front elevation, the floor plan, the layout." Brookwood Dep. 29: 19-23.The layouts in this sketch included the garage, kitchen, dining room, master bedroom, and bathroom. D&D Dep. 25:2-7. However, there are numerous details that were not in the sketch, such as roof shingles, railing of the porch, and electrical components. D&D Dep 27:9-34:15. Throughout this process all creative decisions were made by Nassar. D&D Dep. 55:10-19.

Plaintiff and Bodnar both testified that Brookwood Homebuilding, the Plaintiff's predecessor, brought the sketch Nassar made on graph paper to D&D to be drawn in AutoCAD®. D&D Dep. 36:19-24; Brookwood Dep. 38:17-22. They both testify that Brookwood Homebuilding paid D&D for the work that was done, though no invoice has been produced. D&D Dep. 48:1-6; Brookwood Dep. 40:1-41:16. D&D and Nassar have always agreed, intended, and understood that Mr. Nassar was the sole author of the Caswell Plans. D&D Dep. 36:8-24; 55:10-56:9.

In this case, the dispute comes down to the separation of the creation of the idea of the Caswell Plans and the production of these plans.[1] It is a variation of a distinction that Courts

---

[1] This case is concerned only with the copyright protection on the Caswell Plans created on the AutoCAD® software because that was the only deposit material submitted with the application that resulted in the Asserted Copyright Registration.

have been struggling to delineate. The tension between creating the idea for a work and making it tangible was described thusly:

> Where the manufacture or production of the copyrighted work is distinct from the conception of the work, courts struggle to determine when the idea is translated into a fixed, tangible expression and to whom the credit for the work's creation belongs. Starting with the basic premise that to be an author, one must supply more than mere direction or ideas, *Community for Creative Non–Violence,* 490 U.S. at 737, 109 S.Ct. 2166, courts have attempted to draw a line between providing conceptual guidance that is fixed as a copyrightable work by a separate party and providing detailed designs or blueprints to a manufacturer that simply builds the work as instructed. Authors "are entitled to copyright protection even if they do not perform with their own hands the mechanical tasks of putting the material into the form distributed to the public." *Andrien v. S. Ocean Cnty. Chamber of Commerce,* 927 F.2d 132, 135 (3d Cir.1991); *see also Lakedreams v. Taylor,* 932 F.2d 1103, 1108 (5th Cir.1991). But a person who merely describes to an author what the commissioned work should do or look like is not an author or joint author. *Gaylord v. United States,* 595 F.3d 1364, 1379 (Fed.Cir.2010) (citing *S.O.S. Inc. v. Payday, Inc.,* 886 F.2d 1081, 1087 (9th Cir.1989)). The Federal Circuit in *Gaylord* elaborated on this rule and explained that "[i]f one commissioned a work for a cowboy riding a horse, that contribution would not constitute copyrightable expression" and even if "one later instructed the artist to depict the cowboy as weathered, wearing a cowboy hat, and riding slowly in calm wind, that would not rise to the level of copyrightable expression." *Id.*

*Billco Intern., Inc. v. Charles Products, Inc.*, 776 F.Supp.2d 105, 112 (D.M.D. 2011)

The Defendant claims that Nassar merely had the idea for the Caswell plans and Bodnar, Levin, and Jones actually created the Plans. If this is the case, the Defense says D&D is the author of the Caswell Plans under the "work for hire" exception. "A 'work made for hire' is … a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. Where a work is one for hire, the employer "is considered the author" unless otherwise agreed in writing. 17 U.S.C. § 201(b); *See Community*, 490 U.S. at 737 (1989). Under the Defense's theory, since Bodnar, Levin, and Jones, created the Caswell Plans in the course of their duties while employed by D&D as draftsmen, the Caswell Plans constitute a work made for hire and D&D is the author of the Caswell Plans.

6

The case cited by the Defense to support their argument is *M.G.B. Homes, Inc. v. Amerson Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990). *M.G.B. Homes* is easily distinguishable from the current case. In *M.G.B. Homes*, a client only contributed a thumbnail sketch of a floor plan to a drafting company and retained approval authority. 903 F.2d at 1493. There was no evidence that of intent from either side that the sketch of this floor plan become part of the finished expression of the architecture plans. *Id.*

Clearly more than ideas were supplied by Nassar in this case. Ruling that D&D, who always intended Nassar to be the author of the Caswell Plans, became the sole author of these plans as a matter of law when they added details such as railing and columns to a two-story porch in Nassar's sketches would go against case law as well as common sense. Nassar even made all creative decisions when his sketches were drawn in the AutoCAD® format. Nassar is not required to have with his own hands put his drawings in the AutoCAD® format to be entitled to copyright protection. *See Lakedream*, 932 F.2d at 1008. "The creator of a work at another's direction, without contributing any intellectual modification, is not an author and, therefore, has no copyright interest in the work." *Dawson v. Brandsberg*, 2006 WL 2915234 *3 (W.D.V.A. 2006)

Additionally, issues surrounding the "confirmatory assignment agreement" have been raised by the parties. This agreement was signed in January 2017, after the complaint was filed, but says that the original assignment was effective as of October 2010. As mentioned previously, there has been no written evidence presented of payments or agreement between the two companies.

Also, it is clear from the testimony that there was never an oral agreement to transfer the copyright assignment because both D&D and Nassar were under the impression that Nassar was the sole author at all times. In fact, Bodnar testifies that this is D&D's typical arrangement and "whenever someone brings us a plan to draw, as far as we are concerned, they are the original creator of the plan, and they own the right to that plan." D&D Dep. 36:8-24.

12 U.S.C. § 204(a) provides:

> A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

Defendant objects to the validity of this assignment, arguing that since there is no previous written assignment, this is a brand new *nunc pro tunc* assignment that is an attempt by Brookwood to create standing.

However, while this appears to be a matter of first impression for this Circuit, other courts have recognized that § 204 (like the Statute of Frauds) was intended to guide disputes between owners and the alleged transferees, not to benefit a third-party infringer where there is no dispute of ownership identity between the owner and transferee. *See Billy-Bob Teeth, Inc. v. Novelty Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir.1982); *Imperial Residential Design, Inc. v. Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995); *Great Southern Homes, Inc. v. Johnson & Thompson Realtors*, 797 F.Supp. 609, 611 (M.D.T.N. 1992).

These cases were well-reasoned, and this Court will adopt a similar position. Landis does not have standing under § 204 to challenge the transfer of the copyright

assignment because there is no dispute between the owner and the transferee as to the true owner of the copyright. In such an instance, allowing this provision to benefit an alleged infringer would corrupt the copyright law's purpose.

For the reasons stated, the Court will not find as a matter of law that D&D owns all copyright to the Caswell Plans. There is a genuine dispute of material fact as to the authorship of the Caswell Plans and so this Court cannot say as a matter of law Brookwood lacks standing to pursue any claim for infringement of the Asserted Copyright Registration. The Court does find as a matter of law that the Defendant lacks standing to challenge the transfer of the copyright assignment because there is no dispute about the identity of the true owner of the copyright between the owner and the transferee.

### IV. Conclusion

**IT IS THEREFORE ORDERED** that Defendant Landis Reed Home's Motion for Summary Judgement (Doc. No. 12) is **DENIED**.

By reason of the ownership of the copyright at issue being a factual dispute that requires a jury determination, the trial will be scheduled on the calendar subsequent to the Muckle et al v. Marriott International, Inc. et al trial, which is scheduled to begin September 11, 2017. In the Court's estimation, Muckle will take about a week and a half.

The trial for this case will be bifurcated. The jury will first be required to determine copyright ownership. If jury finds for Defendant on this issue, the trial will proceed no further because that will be a determination of lack of standing. If jury makes a determination in favor of the Plaintiff, the trial will proceed.

Signed: July 21, 2017

Graham C. Mullen
United States District Judge